*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

TPM, a legally incapacitated person, by Next Friend
LINDA DOZIER, also known as LINDA SIMPSON,

      Plaintiff-Appellant,

v

BOARD OF HOSPITAL MANAGERS FOR THE
CITY OF FLINT, doing business as HURLEY
MEDICAL CENTER,

      Defendant-Appellee,

and

KENNETH L. WILSON, M.D., GENESYS
REGIONAL MEDICAL CENTER, WILLIAM R.
SHEPARD, D.O., LIANNE E. MOORE, D.O., also
known as LIANNE E. GRAF, D.O., MCLAREN
FLINT, and GJON DUSHAJ, M.D.,

      Defendants.

UNPUBLISHED
December 18, 2025
9:18 AM

No. 366255
Genesee Circuit Court
LC No. 18-111367-NH

---

Before: K. F. KELLY, P.J., and MARIANI and ACKERMAN, JJ.

MARIANI, J. (*concurring in part and dissenting in part*).

      I respectfully concur in part and dissent in part. While I agree that a portion of Nurse Ridgley's standard-of-care opinion was inadmissible, I believe the trial court overstepped its gatekeeping function in excluding the entirety of the opinion and correspondingly dismissing plaintiff's nursing-negligence claim.

      As to plaintiff's discharge from defendant Hurley's care on March 17, 2016, I agree with the majority and the trial court that Nurse Ridgley's opinion regarding what Hurley's nursing staff should have done once the discharge decision was made—namely, that they should have used a

-1-

chain of command to oppose the decision—lacks a sufficient foundation. Unlike the trial court, however, I do not read Nurse Ridgley's opinion as merely "boil[ing] down to the standard of care that would call for a challenge to the doctor's discharge order by the nurses." Instead, her opinion also comprised what the nursing staff should have done *prior to* the discharge decision. Nurse Ridgley opined that the staff's duty to advocate for plaintiff as their patient required them to actively ensure that, at the time of the discharge decision, the individual ultimately responsible for that decision was duly informed of plaintiff's symptoms, concerns, and clinical status and trajectory. Nurse Ridgley offered literature in support of that standard and explained why she believed, based on her review of the record, that it had been breached in this case.

The trial court did not particularly acknowledge this aspect of Nurse Ridgley's opinion or explain why it was inadmissible, and the court erred, in my view, by excluding it. While the opinion's standard of care may not be terribly complex, the law does not require it to be; the opinion simply needs to be sufficiently supported, reliable, and helpful to the trier of fact. See MRE 702; MCL 600.2955(1). Here, Nurse Ridgley's opinion would help the jury understand the proactive role that the nursing staff was supposed to play in plaintiff's caregiving up through the point of her discharge from their care, and I struggle to see how Nurse Ridgley's offered literature and record support provided an inadequate or insufficiently reliable basis for that standard and its application to this case. A jury may well disagree with Nurse Ridgley's view of how plaintiff's pre-discharge care unfolded. But that there is room for the jury to reject her opinion does not mean that the opinion—and thus plaintiff's claim—is too deficient to even be presented to the jury for consideration. And while it may be that, regardless of what the nursing staff did or did not do in advance of the discharge decision, plaintiff would have been discharged all the same, that strikes me as a question of causation, not standard of care or breach; I thus do not see how it bears on the admissibility of Nurse Ridgley's opinion regarding those latter aspects of plaintiff's claim.

As to plaintiff's visit to Hurley's emergency room on March 19, 2016, I disagree with the trial court and the majority that Nurse Ridgley's opinion lacked a sufficient evidentiary basis. The record reflects questions of fact regarding what exactly happened during that visit—namely, the extent to which the nursing staff monitored plaintiff throughout the visit, and whether she experienced a syncopal episode during it. Nurse Ridgley opined on what care plaintiff should have received from the nursing staff during the visit and how, based on what she found (and did not find) in the record regarding the visit, that standard of care was breached. Again, there is certainly room for a jury to disagree; the jury may not, for instance, choose to credit the version of events offered by plaintiff's mother to the extent that Nurse Ridgley has, or it may read defendant's documentation regarding the visit more favorably to defendant than Nurse Ridgley does. But none of that, in my view, shows that Nurse Ridgley's opinion is so lacking in evidentiary support that it—and with it, plaintiff's claim—cannot even be put before a jury.

Accordingly, I would reverse the trial court's ruling in part, and I respectfully dissent from the majority's conclusion otherwise.

/s/ Philip P. Mariani